## The E. B. Ward, Jr.[1]

### Carlsdotter and others *v.* The E. B. Ward, Jr.[1]

*(Circuit Court, E. D. Louisiana. March 27, 1885.)*

COLLISION—DAMAGES FOR DEATHS OF RELATIVES.

    Relatives of persons whose lives have been lost by reason of a collision upon the high seas are entitled to recover, under the general admiralty law, from the offending vessel damages for the loss of the society and support of their deceased relatives, and for the value of their personal effects.

Admiralty Appeal. See 17 FED. REP. 456.

*John D. Rouse* and *Wm. Grant,* for libelants, appellants.

*Wm. S. Benedict* and *A. J. Murphy,* for claimants, appellees.

PARDEE, J. This cause came on to be heard at this time upon the pleadings and evidence, and was argued by counsel, whereupon, and in consideration thereof, the court doth find the following facts:

(1) The steam-ship E. B. Ward, Jr., owned by Oteri & Bro., of New Orleans, and the Swedish bark Henrik, were, on the twentieth day of January, 1882, in the Gulf of Mexico, about 95 miles off Cape San Antonio, Island of Cuba; the steam-ship proceeding on her voyage, under steam, in a direction south-east by south, and the bark proceeding, under sail, north by west.

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

Both vessels were fully equipped, and carried the usual lights. At 9 o'clock P. M. the vessels sighted each other. The bark first saw the Ward off her port bow, first her white light, then both lights, and the only evidence produced by claimants—that of the man at the wheel of the Ward—shows that the red or port light of the Henrik was the first and only light seen by the Ward. It follows, therefore, that the Ward was approaching the Henrik across her course, when the two vessels came in sight of each other, some time before the collision. In this situation, the wheel of the Ward was put to starboard, and afterwards hard a-port, the vessel changing her course about one and one-half points under each. While the wheel was hard a-port, the Ward struck the Henrik amid-ships, sinking her in a very few minutes. The sailors mentioned in the libel (part of the crew of the Henrik) went down with her, and were drowned.

(2) The bark Henrik kept her course after she sighted the Ward, being the same course she had been sailing since 5 o'clock P. M., until the collision was inevitable, when she luffed, but was struck before she had changed her course very materially. As the wind was blowing from the east, and the sails of the Henrik were close set, the luffing had a tendency to check her speed and to prevent a collision. The master of the Ward admits that the two vessels would have come together head on, if the Henrik had not luffed. This being the case, the action of the bark was not a fault, even if an error of judgment, since it was caused by the immediate presence of a peril caused by the Ward.

(3) The Ward was running at the rate of nine miles an hour when she first saw the lights of the bark, but did not check her speed, when, according to the answer of the claimants and the conduct of her officers, there seems to have been doubt as to the true position of the bark. No attempt was made to stop, by the officers of the Ward, until after the collision actually occurred.

(4) The steam-ship E. B. Ward, Jr., was solely in fault for the collision with the Henrik.

(5) The libelants are the legal representatives of the three sailors named in the libel, who lost their lives in said collision, in manner and form as alleged in said libel.

(6) The said sailor, Carl Peterson, was born on the ——— day of ———, 1837, and was 45 years old at the time of his death, and was earning £2 15s. per month. Gustof Leander Jonssen was born on the eighth day of April, 1860, and was 22 years old at death, and was earning £2 per month. Erick Anderson Holm was born the fifteenth day of January, 1844, and was 38 years old, and was earning £3 per month. Each of said sailors was of good moral character, industrious, and contributed to the support of libelants. Each of said sailors lost clothing and personal effects of the value of $75, and the said Holm lost in addition his chest of tools, valued at $480.

(7) That by the said wrongful and negligent acts of the said steamer E. B. Ward, Jr., her master and crew, the said libelant Christina Carlsdotter, widow and legal heir of Carl Peter Peterson, in the manner and means by which said Peterson came to his untimely death as heretofore found, has suffered damages for the loss of the services, society, comfort, and support of her said husband in the sum of $2,000, and for personal effects in the sum of $75.

(8) That by the said wrongful and negligent acts of said steamer, her master and crew, the said libelants John Gustaf Jonssen and his wife, Charlotta Jacksdotter Jonssen, surviving father and mother and sole heirs at law of said Gustaf Leander Jonssen, in the manner and means by which said Jonssen came to his untimely death as heretofore found, have suffered damages for the loss of services, society, comfort, and support of their said son in the sum of $2,000, and for personal effects in the sum of $75.

(9) That by the said wrongful and negligent acts of the said steam-ship, her master and crew, the said libelants Ulrika Beata Holm, mother, and Eva Maria Holm, sister, and both heirs of Erick Anderson Holm, in the manner

and means by which said Holm came to his untimely death as heretofore found, have suffered damages for the loss of services, society, comfort, and support of their said son and brother in the sum of $2,000, and for personal effects in the sum of $182.20.

1. I find that the steam-ship E. B. Ward, Jr., was in fault in not so changing her course, in presence of the approaching bark, as to avoid said bark, and in not reversing her engines and stopping when her officers were in doubt as to the position of the bark.

2. In my opinion the bark Henrik simply complied with the well-established rules of navigation in keeping her course until the collision became apparently inevitable; and that it was not a fault on her part to attempt to avoid the collision at the last moment, while in the presence of a danger brought about by the fault of the steam-ship.

3. Libelants, in my opinion, are entitled to recover under the general admiralty law for the loss of the society and support of their deceased relatives, and for the personal effects.

It is therefore ordered, adjudged, and decreed that the libelant Christina Carlsdotter, surviving widow of the said Carl Peter Peterson, deceased, do have and recover of the steam-ship E. B. Ward, Jr., the sum of $2,075. That the libelants John Gustof Jonssen and his wife, Charlotta Jacksdotter Jonssen, parents of the said Gustof Leander Jonssen, deceased, do have and recover of the said steam-ship E. B. Ward, Jr., the sum of $2,075; and that Ulrika Beata Holm, the mother, and Eva Maria Holm, the sister, of the deceased Erick Anderson Holm, do have and recover of the steam-ship E. B. Ward, Jr., the sum of $2,182.20,—all with 5 per cent. interest on each sum from January 20, 1882, until paid, and all costs of suit. And whereas, the said steam-ship E. B. Ward, Jr., having been claimed by Salvator Oteri and Joseph Oteri, was released unto them on bond, with E. M. Stella as security: It is ordered, adjudged, and decreed that libelants respectively have judgment against the said Salvator Oteri, Joseph Oteri, and E. M. Stella, *in solido*, for the several amounts awarded as above against the said steam-ship E. B. Ward, Jr., with 5 per cent. interest per annum from January 20, 1882, until paid, and all costs of this suit. It is further ordered that execution issue in favor of each of said libelants for the amount due them respectively in due course.